Richard COLEMAN, et al., Plaintiffs,

v.

The PENSION BENEFIT GUARANTY
CORPORATION, Defendant.

No. Civ.A. 99–278 SSH.

United States District Court,
District of Columbia.

Aug. 10, 2000.

Susan S. Sauntry, Washington, DC, for plaintiffs.

Jeffrey Bruce Cohen, Nancy Snyder Heermans, Pension Benefit Guaranty Corp., Office of the General Counsel, Washington, DC, for defendants.

### MEMORANDUM ORDER

STANLEY S. HARRIS, Senior District Judge.

Before the Court are defendant's motion to strike plaintiffs' demand for a jury trial, plaintiffs' motion to certify their action as a class action, and the parties' responsive pleadings to these motions.[1] Upon consideration of these submissions, the Court grants defendant's motion to strike, dismisses the alternative claim pleaded by plaintiffs in Count I of their complaint, and grants plaintiffs' motion to certify.

### I. Background

Because the background to this litigation is set forth fully in the Court's March 21, 2000, Opinion, *Coleman v. PBGC*, 94 F.Supp.2d 18 (D.D.C.2000), only a brief summary is necessary here. Plaintiffs are former employees of McLouth Steel Products Corporation ("McLouth Products") who claim benefits under a pension plan, the "Products Plan," previously administered by McLouth Products. Defendant Pension Benefit Guaranty Corporation ("PBGC") is a federal agency that administers the pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1301–1461. On September 29, 1995, McLouth Products filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Pursuant to an agreement reached with PBGC and the United Steelworkers of America (the "Union"), McLouth Products amended the Products Plan on October 27, 1995, by suspending the provision of Layoff Pension Benefits ("LPBs"), which allowed plan participants meeting a combination of age and service requirements to take early retirement with enhanced benefits in the event of a layoff. All of the plaintiffs were laid off by McLouth Products in March 1996, and the Products Plan was terminated effective August 11, 1996. Thereafter, PBGC became statutory trustee of the Products Plan, and advised plaintiffs that they could not claim LPBs because they had been eliminated from the Products Plan.

Plaintiffs filed the instant lawsuit in February 1999. Count I alleges that the plan amendment suspending LPBs is invalid because it contravened 29 U.S.C. § 1054(g)(1) or, in the alternative, because the Union's

---

1. Plaintiffs filed a supplemental response to defendant's reply in support of its motion to strike, and an accompanying motion for leave to file this supplemental response. Because defendant's reply raises new issues more appropriately presented in a motion under Fed.R.Civ.P. 12(b), *see infra* Part II, the Court grants plaintiffs' motion for leave to file.

consent was obtained through misrepresentation. Count II alleges that a 1996 transfer of $12.68 million in Products Plan assets by McLouth Products to PBGC was a prohibited transaction in violation of 29 U.S.C. § 1106 because it benefitted McLouth Products. Plaintiffs request that the Court declare the amendment to the Products Plan invalid, require PBGC to pay LPBs to all class members, and require PBGC to repay the Products Plan $12.68 million. On March 21, 2000, the Court denied PBGCs' motion to dismiss.

## II. *Motion To Strike*

PBGC moves to strike plaintiffs' demand for a jury trial on the ground that ERISA claims sounding in equity do not carry a right to a jury trial. Plaintiffs essentially concede that they are not entitled to a jury trial on their claims alleging ERISA violations, and seek a jury trial only as to their alternatively-pleaded common law misrepresentation claim. *See* Pls.' Resp. at 2. PBGC counters that plaintiffs may not assert their misrepresentation claim because it is preempted by ERISA, and because PBGC is immune from such a claim under a provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h).[2] Plaintiffs challenge the merits of those arguments, and contend that they are not timely because PBGC did not raise them in its motion to dismiss.

■ Although PBGC's sovereign immunity and preemption defenses formally arise in the context of PBGC's motion to strike under Federal Rule of Civil Procedure 39(a)(2), they respectively allege grounds for dismissing plaintiffs' misrepresentation claim for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). *See, e.g., Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir.1998) (treating issue of sovereign immunity as one

of subject matter jurisdiction under Rule 12(b)(1)); *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d 1115, 1116–18 (5th Cir.1990) (dismissing state law claim under Rule 12(b)(6) because preempted by ERISA). Because PBGC omitted the defense of preemption from its previous motion to dismiss, its ability to assert that defense now is governed by the restrictions set forth in Rule 12(g) and (h)(2).[3] Rule 12(g) states that if a party files a Rule 12(b) motion but omits any of the defenses enumerated in 12(b) then available, the omitted defense is waived except to the extent permitted by Rule 12(h)(2). Rule 12(h)(2) states that a "defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Because PBGC's instant motion does not fall within this set of categories, Rule 12(g) appears to preclude PBGC from raising the defense of preemption.

Nevertheless, the Court will allow PBGC to assert that defense at this stage in the litigation. As indicated, PBGC's preemption defense is not waived because PBGC may still raise it in a motion for judgment on the pleadings or at trial. "[G]iven the lack of waiver and the fact that defendant's defense[ ] will still require adjudication in any event, many courts permit the defense of failure to state a claim upon which relief can be granted to be asserted in a subsequent motion as a means of preventing unnecessary delay in the proceedings." *In re Westinghouse Securities Litigation*, 1998 WL 119554, *6 (W.D.Pa. Mar.12, 1998) (citing cases); *see also Vega v. State University of New York Board of Trustees*, 2000 WL 381430, *2 (S.D.N.Y. Apr.13, 2000) (allowing successive motion to dismiss asserting Rule 12(b)(6) de-

---

2. PBGC also argues that plaintiffs did not plead a common law misrepresentation claim in their complaint. The Court disagrees; ¶ 61 of the complaint alleges that the amendment to the plan is invalid because it "was obtained through misrepresentation," and ¶¶ 35–41 plead the elements of a common law claim of fraudulent misrepresentation. *See, e.g., State–William Partnership v. Gale*, 169 Mich.App. 170, 425 N.W.2d 756, 761 (1988) (discussing elements of fraudulent misrepresentation under Michigan law).

3. Although PBGC also omitted its sovereign immunity defense from its motion, that defense does not face a similar restriction because Rule 12(h)(3) allows a party to raise the defense of lack of subject matter jurisdiction at any time. The Court, however, does not address the merits of this defense because it concludes that plaintiffs' misrepresentation claim is preempted by ERISA.

fense omitted from first motion). Moreover, there is no reason to believe that PBGC is seeking to delay the litigation or inconvenience plaintiffs by asserting preemption at this stage. *See Federal Express Corp. v. United States Postal Service,* 40 F.Supp.2d 943, 948–49 (W.D.Tenn.1999) (emphasizing defendant's lack of intent to delay action or inconvenience plaintiff in allowing successive Rule 12(b)(6) motion); *Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440, 444 (S.D.N.Y.1988) (emphasizing lack of intent to delay). In the absence of any apparent bad faith, and in the interest of promoting the efficient resolution of this case, the Court will consider PBGC's preemption argument.

■■■ ERISA preempts "any and all State laws" that "relate to" any covered employee benefit plan. 29 U.S.C. § 1144(a). A "state law" within the meaning of this provision encompasses "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," *id.* § 1144(c), including common law causes of action, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Under this interpretation, a state law of general application "will ... be preempted insofar as the law applies to a benefit plan in particular cases." *Board of Trustees of the Hotel and Restaurant Employees Local 25 v. Madison Hotel, Inc.,* 97 F.3d 1479, 1486 (D.C.Cir.1996) (quoting *Boren v. N.L. Industries, Inc.,* 889 F.2d 1463, 1466 (5th Cir.1989)). "Thus, even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered by ERISA, will nonetheless be preempted insofar [as] they affect ERISA-protected rights." *Id.* at 1486–87.

■■■ The Court finds that plaintiffs' common law claim relates to an employee bene-

fits plan within the meaning of ERISA's preemption clause. First, the claim relies on the existence of the Products Plan because it alleges that McLouth Products and PBGC obtained the Union's consent to amend the plan by misrepresenting that the plan would not be terminated if it were amended. Second, plaintiffs advance their misrepresentation claim as an alternative basis for recovering LPBs under the Products Plan.[4] *See McNeil v. Time Ins. Co.,* 205 F.3d 179, 191 (5th Cir.2000) (finding state law claims preempted because they addressed "right to receive benefits under the terms of an ERISA plan"); *Zuniga v. Blue Cross & Blue Shield,* 52 F.3d 1395, 1401 (6th Cir.1995) (whether state law claim is "in essence" claim for ERISA plan benefits determines whether it is preempted); *Variety Children's Hosp. v. Century Med. Health Plan,* 57 F.3d 1040, 1042 (11th Cir.1995) (state law fraud and misrepresentation claims relate to ERISA plan because based on plan's nonpayment of benefits). Finally, because plaintiffs' claim bears on disclosure practices relating to a plan amendment, its adjudication could affect ERISA-protected rights by influencing how ERISA plans are amended in the future. *Cf. Shea v. Esensten,* 107 F.3d 625, 627 (8th Cir.1997) (state law claim alleging insufficient disclosure of information on plan coverage preempted because it could affect how ERISA plans are administered). Accordingly, the Court concludes that plaintiffs' common law misrepresentation claim is preempted by ERISA and must be dismissed. Because plaintiffs concede that they are not entitled to a jury trial on their ERISA claims, PBGC's motion to strike is granted.

### III. *Motion To Certify Class Action*

Plaintiffs move to certify their lawsuit as a class action. Rule 23(a) of the Federal Rules of Civil Procedure imposes four prerequisites to establishing a class action: (1) the putative class must be so numerous that joinder is impracticable ("numerosity"); (2) there must be questions of law or fact common to the

---

4. Plaintiffs' citation to *Airparts Co. v. Custom Benefit Servs., of Austin, Inc.,* 28 F.3d 1062 (10th Cir.1994), is inapposite. There, the plaintiffs' common law fraud claim was not "related to" an employee benefits plan because, unlike here, the plaintiffs were "not ... resorting to state law to avail themselves of an alternative cause of action to collect benefits." *Id.* at 1065.

class ("commonality"); (3) the claims or defenses of the class representatives must be typical of the class ("typicality"); and (4) the class representatives must fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R.Civ.P. 23(a). If the putative class representatives satisfy the requirements of Rule 23(a), they must demonstrate that their action is maintainable under one of the three types of class actions described in Rule 23(b). Plaintiffs argue that their action is maintainable under either (b)(2) or (b)(3). "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Rule 23(b)(2)). Rule 23(b)(3) is "[f]ramed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations," but "where class suit 'may nevertheless be convenient and desirable.'" *Id.* at 615, 117 S.Ct. 2231 (quoting Advisory Committee Notes). Rule 23(b)(3) requires that the common questions in the case predominate over questions affecting individual class members, and that a class action be superior to "other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). PBGC does not appear to dispute that Rule 23(a)'s prerequisites to a class action are satisfied, but contends that this action is not maintainable under Rules 23(b)(2) or 23(b)(3). The Court finds that this action satisfies the Rule 23(a) prerequisites to a class action, and is maintainable under Rule 23(b)(2).

### A. *Prerequisites to a Class Action*

Plaintiffs seek to certify a class encompassing all Products Plan participants who were laid off from employment after October 27, 1995, and who met the eligibility requirements for LPBs. According to plaintiffs' unchallenged estimate, 900 former McLouth Products employees meet these criteria. The sheer size of the putative class satisfies the numerosity requirement because it persuades the Court that joinder would be impracticable. *See, e.g., Thomas v.*

*Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996) ("Although Rule 23 requires no minimum number of class members, numerosity is generally satisfied by a proposed class of at least 40 members."), *aff'd in part and rev'd in part*, 139 F.3d 227 (D.C.Cir.1998); *E.E.O.C. v. Printing Industry of Metropolitan Washington D.C., Inc.*, 92 F.R.D. 51, 53 (D.D.C.1981) ("as few as 25–30 class members should raise a presumption that joinder would be impracticable").

"The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997). In this case, all of the putative class members, by definition, were eligible to receive LPBs under the Products Plan. Because the resolution of the core allegations in the complaint concerning the plan amendment and the diversion of $12.68 million in plan assets will affect all members, the allegations are sufficient to satisfy the commonality requirement.

The Court also finds that plaintiffs' claims are typical of the absent class members. "The typicality prerequisite is 'intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented.'" *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 177 (D.D.C.1999) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)). Plaintiffs' incentives are sufficiently aligned with those of the absent class members because all putative class members suffered the same alleged injury—denial of LPBs—from the same alleged source—the amendment of the Products Plan.

Finally, in determining the adequacy of class representation, the Court must assess whether the putative class counsel is qualified to prosecute this action, and whether any conflicts of interest exist between plaintiffs and the absent class members. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir.1997). Based on

their qualifications and litigation experience, plaintiffs' attorneys appear qualified to represent the class. *See* Pls.' Mot., Exs. V & W. And, given the extensive commonality of factual and legal issues in this case, the Court cannot discern any conflict between the interests of plaintiffs and the absent class members. The Court concludes that plaintiffs meet the adequacy-of-representation prerequisite.

### B. *Types of Class Actions*

 Plaintiffs assert that this action maybe maintained as a class action under Rule 23(b)(2). The Court agrees.[5] Certification of a class action under Rule 23(b)(2) requires that "the party opposing the class [have] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Because the plan amendment suspending LPBs affected all putative class members, class-wide injunctive and declaratory relief is appropriate in this case. Plaintiffs request this relief in the form of an order declaring the plan amendment invalid, and enjoining PBGC to repay the Products Plan $12.68 million. Plaintiffs also request monetary relief in the payment of LPBs to plan participants meeting the eligibility criteria under the Products Plan. PBGC contends that the payment of benefits is a form of relief that is inconsistent with class certification. The Court disagrees. A class certified under Rule 23(b)(2) may recover monetary relief in addition to declaratory and injunctive relief, "at least where the monetary relief does not predominate." *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C.Cir.1997); *see also* Advisory Comm. Note to Fed.R.Civ.P. 23(b)(2) (noting that 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."). Plaintiffs' request for monetary relief does not "predominate" because it flows from their request for a declaratory judgment that the plan amendment suspending LPBs was invalid. In this vein,

plaintiffs' claim for benefits is equitable in nature because it seeks restitution, rather than damages, thus rendering it appropriate for certification under Rule 23(b)(2). *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir.1999) (distinguishing "monetary *damages*" from "equitable monetary *relief* such as back pay" under Rule 23(b)(2) (emphasis in original)). Further, this case is not one in which "the underlying premise of (b)(2) certification—that the class members suffer from a common injury that can be addressed by classwide relief—begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries." *See Eubanks*, 110 F.3d at 95 (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154–57 (11th Cir.1983)). Notably, plaintiffs and the putative class members suffered the same alleged injury from the same alleged source; and, as PBGC notes, "under ERISA they are entitled to receive whatever benefits they are eligible for under the [Products] Plan that are guaranteed under Title IV." PBGC's Opp'n at 4 n. 7 (citing 29 U.S.C. § 1322; 29 C.F.R. §§ 4022.3, 4022.4).

 PBGC also opposes class certification on the ground that it is unnecessary. PBGC argues that, if the Court declares the plan amendment invalid, PBGC will pay benefits to "[p]laintiffs and all other similarly situated participants without regard to the amendment," and that as an agency of the federal government, it is entitled to the presumption that it will abide by the Court's order. PBGC's Opp'n at 4–5. In support of its argument, PBGC cites to a line of cases "denying class certification under Rule 23(b)(2), when a class is not needed to obtain the same relief." *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir.1985); *see, e.g., Aacen v. San Juan County Sheriff's Dept.*, 944 F.2d 691, 700 (10th Cir.1991); *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973). That line of cases, however, does not control the outcome of plaintiffs' motion, as the Court is unaware of any case from the Court of Appeals of this Circuit adopting a "necessity" requirement in

---

**5.** As discussed, plaintiffs argue that this action is alternatively maintainable under Rule 23(b)(3). Because it finds certification under Rule 23(b)(2)

appropriate, the Court does not reach plaintiffs' alternative argument.

the Rule 23(b)(2) context. In the absence of controlling precedent, the Court is unpersuaded by PBGC's "necessity" argument, as it would effectively render Rule 23(b)(2)'s procedures obsolete in actions for injunctive relief, at least where a government agency is a defendant. *See Littlewolf v. Hodel,* 681 F.Supp. 929, 937 (D.D.C.1988) ("Were class certification inappropriate if 'unnecessary,' it would be inappropriate whenever only injunctive relief is sought, as the proposed relief would apply to all persons, whether class members or not."). Moreover, "for every class denial on the basis of lack of need, one is able to find a decision, or several decisions, often in the same circuit, where other courts have certified Rule 23(b)(2) classes under virtually the same circumstances." *Id.* (quoting 1 Newberg on Class Actions § 4.19). In any event, assuming *arguendo* the existence of a necessity requirement under Rule 23(b)(2), class certification may be "necessary" in this case to provide putative class members with the desired relief because questions as to individual eligibility to receive LPBs could arise after a (possible) judgment declaring the plan amendment invalid.

■ Finally, PBGC argues that certifying this case as a class action would burden the Court because it would become "inextricably involved in determining the benefits of hundreds of participants." PBGC's Opp'n at 6. PBGC argues that this process is "especially inappropriate when, [as here,] PBGC has procedures in place for making such complex determinations." *Id.* at 7. The Court, however, disagrees that certifying this case as a class action would unduly tax judicial resources, because, if deemed appropriate, the Court may bifurcate this action into liability and relief phases. With respect to the relief phase of such a bifurcated action, the Court could fashion procedures that minimize the judicial burden of calculating benefit amounts by utilizing the expertise offered by, for example, a special master or the PBGC itself. *See, e.g., Berger v. Iron Workers Reinforced Rodmen,* 170 F.3d 1111, 1116–17 (D.C.Cir. 1999) (employment discrimination class action bifurcated into liability and damages phases; claims for back pay during damages phase referred to special master). While the Court expresses no opinion at this time as to whether it will bifurcate this case, and if so, how it will manage the relief phase if that phase is reached, it finds the mere possibility that this case will require individualized benefit determinations insufficient to bar class certification.

In sum, the requirements for certifying this class under Rule 23(b)(2) are satisfied.[6] Accordingly, it hereby is

ORDERED, that plaintiffs' motion to certify their action as a class action is granted. The class of plaintiffs in this case shall include all participants in the Products Plan who were laid off from employment after October 27, 1995, and who met the eligibility requirements for Layoff Pension Benefits. It hereby further is

ORDERED, that plaintiffs' common law misrepresentation claim, pleaded in the alternative in Count I, is dismissed. It hereby further is

ORDERED, that defendant's motion to strike plaintiffs' demand for a jury trial is granted. It hereby further is

ORDERED, that plaintiffs' motion for leave to file a supplemental response to defendant's reply is granted. Plaintiffs' supplemental response is deemed filed as of June 8, 2000.

SO ORDERED.

---

**6.** Plaintiffs' motion does not address whether class members should be entitled to opt out of this action. Rule 23(c)(2) states that all class members are entitled to notice and a right to opt out of actions certified under Rule 23(b)(3), but does not impose comparable requirements for actions certified under (b)(1) or (b)(2). Nevertheless, in certain circumstances where the plaintiffs request monetary as well as injunctive relief, a district court may, in its discretion, provide class members with the right to opt out of a class action certified under (b)(1) or (b)(2). *See Eubanks,* 110 F.3d at 94–96. Although plaintiffs request monetary relief, the Court declines to exercise its discretion in this manner because the circumstances justifying opt out rights in a (b)(2) action do not appear to be present. *See id.* at 96.