**Penelope CLARKE, as personal representative of the Estate of Howard Pickard, Plaintiff,**

v.

**FORD MOTOR COMPANY, and Ford General Retirement Plan, Defendants.**

No. 01–C–0961.

United States District Court, E.D. Wisconsin.

March 29, 2004.

---

Jordan M. Lewis, Minneapolis, MN, Michael P. Herbrand, Grafton, WI, for Plaintiff.

Neil L. Johnson, Nick G. Kotsonis, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Penelope Clarke, in her capacity as the personal representative of her deceased father, Howard Pickard ("Pickard"), a former employee of defendant Ford Motor Company and a participant in defendant Ford General Retirement Plan, brings this putative class action under the Employment Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et seq. I will refer to defendants collectively as "Ford." Plaintiff alleges two causes of action. First, pursuant to § 1132(a)(1)(B), she alleges that Ford wrongfully withheld benefits owed to Pickard and putative class members, and she seeks a declaratory judgment to that effect and restitution of unpaid benefits. Second, pursuant to § 1132(a)(3), plaintiff alleges that Ford breached its fiduciary duty to her and putative class members by violating various provisions of ERISA, and she seeks appropriate equitable relief. Before me now is plaintiff's motion for class certification.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pickard worked for Ford from January 25, 1954 to June 30, 1966, when he resigned to open a Ford dealership. He was a participant in Ford's retirement plan. When he resigned, he withdrew that portion of his retirement benefits that he had personally contributed. At that time, he was over fifty-five and had worked for Ford for more than ten years and was, therefore, eligible for early retirement benefits. However, he did not apply for such benefits. On February 6, 1975, he reached age sixty-five, and in March 1975, became eligible to receive normal retirement benefits. However, he did not apply for these benefits either.

Effective July 1, 1994, Ford eliminated its "age seventy rule," which provided that employees who separated from service prior to January 1, 1976 and did not apply for benefits until they were over seventy could not receive benefits. After eliminating the rule, Ford sent a "benefits letter" to 291 former employees whom it believed might be eligible

for benefits because of the change. The letter stated:

> Our records indicate that you separated from Company employment prior to January, 1976, and were entitled to a benefit from the General Retirement Plan (GRP). You presently are not receiving benefit payments.
>
> . . . .
>
> If you have applied for and been denied a GRP benefit due to the age 70 requirement, or have never applied, we encourage you to immediately contact [Ford] to apply for your benefit.

(Pl.'s Br. in Supp. of Mot. for Summ. J. at 3–4.)

As the result of the letter, 161 individuals, including Pickard, applied for benefits. Ford concluded that all of the applicants were entitled to benefits commencing on the effective dates of their applications but not for periods prior to such dates. Pickard began receiving benefits on August 1, 1996. However, he initiated a claim with Ford alleging that he was entitled to benefits for the period between March 1975 and August 1996. Pickard died on July 31, 1997, and, as his personal representative, plaintiff continued to press his claim. She proceeded through the various steps in Ford's administrative process, but on June 21, 2000, Ford denied her appeal.

On July 28, 2000, plaintiff sued Ford and Comerica Bank, the trustee of Ford's retirement plan, for unpaid benefits accrued by Pickard between March 1975 and August 1, 1996. In September 2001, pursuant to Fed. R.Civ.P. 41, plaintiff dismissed the suit and filed the present action. On February 20, 2003, she filed an amended complaint adding the claims of putative class members.

Additional facts will be stated in the course of the decision.

## II. DISCUSSION

### A. Ford's Arguments Against Class Certification

Ford makes a number of arguments against class certification, but some of them go beyond that issue and raise the question of whether plaintiff's claims and/or those of putative class members may proceed at all. I will address all of the arguments raised by Ford in its brief against class certification but, in doing so, I will attempt to avoid analyzing the merits of the case. *See Retired Chi. Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993) (stating that generally court should not engage in analysis of merits when determining whether a class action may be maintained).

### 1. Whether Plaintiff Has Standing to Sue

■ Ford argues that, as the personal representative of Pickard's estate, plaintiff lacks standing to bring the present action. If Ford is correct, not only can plaintiff not represent the class, but the case must be dismissed altogether. This is so because the requirement that a litigant have standing to bring a lawsuit in federal court is derived from the requirement in Article III, Section 2 of the Constitution that federal courts may adjudicate only actual cases or controversies. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). If plaintiff lacks the necessary interest in the lawsuit to have standing, there is no case or controversy, and the court lacks jurisdiction. *See Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ When a lawsuit is founded directly on a statute, to determine whether the plaintiff has standing, I look to the language and intent of the statute. Wm. J. Fletcher, *The Structure of Standing,* 98 Yale L.J. 221, 264 (1988). The present suit is founded on ERISA, and it is undisputed that as a "participant" in an ERISA plan, Pickard would have had standing to bring the action. *See* 29 U.S.C. §§ 1002(7) and 1132(a)(1). The question presented, however, is whether plaintiff, as Pickard's personal representative, has standing to sue on his behalf. The answer depends on whether Pickard's causes of action under ERISA survived his death. *See Ex Parte Schreiber,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884); *see also* Fletcher, *supra,* at 262–65.

■ Although ERISA is silent on the issue, as a general rule, a cause of action that is founded on a remedial statute, as opposed to one that is penal in nature, will survive the death of the party possessing the cause of action. *Schreiber*, 110 U.S. at 80, 3 S.Ct. 423; *see also Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 414–15 (7th Cir.1980), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir.1982). A remedial statute is one that redresses individual wrongs and under which recovery runs directly to individuals. *Khan v. Grotnes Metalforming Sys., Inc.*, 679 F.Supp. 751, 756 (N.D.Ill.1988). ERISA is a remedial statute. *Id.* Its primary purpose is to protect participants in employee benefit plans from losing anticipated benefits. *Id.; see also Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984) (stating that "ERISA, like the Civil Rights Acts of 1871 and 1964 ... is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans."). Because ERISA is remedial in nature, Pickard's ERISA based causes of action survived his death. Accordingly, as his personal representative, plaintiff has standing to assert them on his behalf.

■ A number of courts have reached similar conclusions and held that the estates of deceased participants or beneficiaries of ERISA plans have derivative standing to bring actions for pre-death benefits denied by plan providers. *See, e.g., Yarde v. Pan Am. Life Ins.*, Nos. 94–1167, 94–1312, 1995 WL 539736, at *6 (4th Cir. Sept.12, 1995) (applying derivative standing doctrine so as to adhere to ERISA's fundamental aim of protecting the interests of plan participants and their beneficiaries and stating that "[a]n insurance company should not be allowed to deny ... benefits merely because the participant and beneficiary of the health plan have died"); *Gustafson v. Kennametal, Inc.*, No. 00 CIV. 7396 RWS, 2001 WL 25722, at *4 (S.D.N.Y. Jan.10, 2001) (stating that to deny standing to personal representative would be to deny any recovery at all); *Hirsch for Estate of Hirsch v. Nat'l Mall & Serv., Inc.*, 989 F.Supp. 977, 982–83 (N.D.Ill.1997) (stating that deceased plan participant's spouse had ERISA standing because she stood in participant's shoes); *Cottle v. Metro. Life Ins. Co.*, No. 92 C 1452, 1993 WL 8201, at *2 (N.D.Ill. Jan.13, 1993) (stating that to allow derivative suits on behalf of deceased participants and beneficiaries promotes purposes of ERISA of protecting such individuals); *James v. La. Laborers Health & Welfare Fund*, 766 F.Supp. 530, 534 (E.D.La.1991) (stating that denial of standing to personal representative would result in patent injustice because upon death all benefits due beneficiary might not be paid, and decedent's family would be unduly burdened); *McKinnon v. Blue Cross–Blue Shield of Ala.*, 691 F.Supp. 1314, 1315 (N.D.Ala.1988) (authorizing daughter to bring ERISA claim as personal representative of deceased father).

For the reasons previously stated, I agree with the courts' conclusions in the above cases. To deny standing to a representative of a deceased participant would frustrate a principal purpose of ERISA, namely to protect the interests of participants in employee benefit plans. *See Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 809 (7th Cir.2000). Thus, plaintiff has standing to sue.

## 2. Whether Plaintiff's Breach of Fiduciary Duty Claim is Time–Barred

■ Ford argues that plaintiff's breach of fiduciary duty claim is barred by the statute of limitations and, therefore, must be dismissed. Title 29 U.S.C. § 1113 provides the statute of limitations for ERISA breach of fiduciary duty claims and states, in relevant part, that actions must be commenced "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." In order to have actual knowledge of a violation, a plaintiff must know of the essential facts of the transaction or conduct constituting the violation. *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992). For a plaintiff to have acquired such knowledge, the fiduciary must have clearly repudiated the alleged duty and made such repudiation known to the plaintiff. *See, e.g., Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 67 (7th Cir. 1996) (stating that a participant's ERISA cause of action accrues when there has been a clear, unequivocal and continuing repudia-

tion of his claim); *see also Borowski v. Int'l Bus. Machs. Corp.,* 928 F.Supp. 424, 428 (D.Vt.1996) (stating that a plaintiff's ERISA cause of action for breach of fiduciary duty accrues when the fiduciary has clearly repudiated an alleged duty and made such repudiation known to the participant or beneficiary).

■ In the present case, Ford argues that plaintiff had actual knowledge of Ford's alleged breach at the latest on July 24, 1997, when her attorney wrote to Ford and stated that by failing to notify Pickard of his eligibility for benefits, Ford had not acted in good faith. However, plaintiff's letter cannot be reasonably characterized as a clear and unequivocal repudiation by Ford of its alleged duty to pay the benefits in question. Nor can Ford's subsequent correspondence with plaintiff's counsel be reasonably construed as such a repudiation. In its correspondence, Ford rejected plaintiff's position but advised plaintiff that she could appeal to the next level of its administrative process, thereby indicating that it could conceivably reach a decision that was favorable to plaintiff. Not until June 21, 2000, when its appeals process was completed, did Ford clearly, unequivocally and finally repudiate plaintiff's claim. *See Daill,* 100 F.3d at 67 (stating that clear and unequivocal repudiation of plaintiff's claim to benefits so as to trigger statute of limitations did not commence until plaintiff's appeal was decided).

For the foregoing reasons, the statute of limitations with respect to plaintiff's breach of fiduciary duty claim began to run on June 21, 2000. Plaintiff commenced suit approximately fifteen months later, well within the three year limitation period. Thus, plaintiff's breach of fiduciary duty claim was timely asserted.

### 3. Whether Plaintiff's Action and/or the Claims of Putative Class Members are Barred by Laches

■■ Ford argues that plaintiff's suit is barred by laches and that, in any case, class certification is improper because the claims of putative class members might be barred by laches. Laches is an equitable defense applicable to claims under ERISA. *Bennett v. Tucker,* 827 F.2d 63, 68 (7th Cir.1987). To prevail on a laches defense, a defendant must show: (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of the claim; and (2) that the delay operated to the prejudice or injury of the defendant. *Day v. Wall,* 112 F.Supp.2d 833, 839 (E.D.Wis.2000) (citing *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan,* 942 F.2d 1190, 1194 (7th Cir.1991)). The mere passage of time does not amount to laches; rather the delay must be unreasonable and inexcusable. *Id.*

■ In the present case, the record does not support Ford's assertion that Pickard and/or plaintiff unreasonably and inexcusably delayed filing suit after they knew or reasonably should have known of Pickard's claim. Ford argues that because Pickard withdrew his own contributions to the pension plan in 1966, I may infer that he knew or reasonably should have known of his entitlement to other benefits. I disagree and conclude that it is more reasonable to infer from Pickard's conduct that he was unaware that he was eligible for other benefits. First, he did not ask for other retirement benefits until he received Ford's 1996 letter. It is highly unlikely that a person who was entitled to retirement benefits would knowingly forego them. Second, immediately after receiving the 1996 letter, Pickard applied for benefits, thereby indicating that he was interested in receiving them. Third, Ford does not present evidence indicating that Pickard knew or reasonably should have known that he might have been entitled to other benefits. Thus, on the basis of the present record, I cannot conclude that plaintiff knew or reasonably should have known of his right to benefits. Thus, I cannot say that the delay in filing suit was unreasonable or inexcusable. Therefore, the action will not be dismissed based on laches.

■ Further, for the reasons discussed above, it appears likely that putative class members were unaware that they could be entitled to benefits. Therefore, on the basis of the present record, I also cannot conclude

that the claims of putative class members are barred by laches.

### 4. Whether a Class Exists

In order for a plaintiff to maintain a class action, an identifiable class must exist. *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981); *see also* 5 James Wm. Moore, *Moore's Federal Practice* § 23.20 (3d ed.2003) (stating that an implicit requirement of Rule 23 is the existence of an identifiable class). Further, the class must be susceptible to precise definition. *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573 (N.D.Ill.1992). Ford argues that a certifiable class does not exist and points out that plaintiff modified her definition of the putative class during the course of briefing. Plaintiff does not dispute that during the course of the litigation she modified her definition of the class. However, the modifications were minor, and Ford was not prejudiced by them. More importantly, plaintiff has identified a clearly defined class consisting of the 161 Ford retirees who received the 1996 letter and applied for and received prospective but not retroactive benefits. Therefore, an identifiable class exists.

### 5. Whether Plaintiff is a Member of the Putative Class

A second implied requirement of a class action is that the class representative be a member of the class. *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992). Ford argues that plaintiff is not a member of the putative class because, in its parlance, the other recipients of the benefits letter were "deferred vesteds," whereas Pickard was an "early retiree" who received the letter by mistake. Under Ford's retirement plans, a deferred vested was an employee with ten years of service who was under fifty-five when he left Ford, and an early retiree was an employee with ten years of service who was over fifty-five upon separation from Ford.

Notwithstanding Ford's terminology, based on the present record, it appears likely that plaintiff is a member of the putative class. This is so because it appears that the differences between deferred vesteds and early retirees are immaterial to the issues in the present case. Plaintiff's argument applies equally to deferred vesteds and early retirees. She contends that Ford must pay benefits to retirees in both categories for the period between their sixty-fifth birthdays and the effective dates of their applications for benefits. Ford points out that deferred vesteds and early retirees were subject to different pension plans. However, Ford does not demonstrate that the differences between its various retirement plans are significant insofar as they relate to the possible entitlement of either category of retiree to retroactive benefits. Thus, Ford's argument that plaintiff is not a member of the putative class is rejected.

### 6. Whether Putative Class Members Were Required to Exhaust Administrative Remedies

Ford argues that class certification is improper because, even though plaintiff exhausted Ford's administrative remedies, other members of the putative class did not. However, where exhaustion is a precondition for suit, only the class representative must satisfy such requirement. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 5:15 (4th ed.2002). More specifically, "in the context of an ERISA class action, only the *named plaintiffs* must exhaust their administrative remedies." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D.Pa.2001); *see also Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust*, 134 F.Supp.2d 189, 211 (D.Mass.2001). To require all class members to exhaust administrative remedies would place an unnecessary procedural hurdle in the path of ERISA plaintiffs and, thus, contravene ERISA's goal of protecting the interests of participants in benefit plans by providing convenient access to the federal courts. *Gallegos*, 210 F.3d at 809. Thus, I reject Ford's argument that the failure of putative class members to exhaust administrative remedies defeats class certification.

### 7. Whether Putative Class Members' Benefit Claims are Barred by the Statute of Limitations

Ford does not dispute that insofar as plaintiff seeks unpaid benefits, her action was timely filed but argues against class certification on the ground the benefit claims of putative class members are or may be barred by the statute of limitations. ERISA does not contain a statute of limitations for claims brought under § 1132(a)(1)(B); thus, courts borrow an analogous state statute, typically that governing breach of contract suits. *See Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 250–53 (7th Cir.1983). The statute of limitations for contract actions in Wisconsin (where Pickard resided) and Michigan (where Ford is located), is six years. Ford argues that the benefit claims of putative class members accrued in mid–1996 when the benefits letter was received, and that plaintiff did not file her amended complaint asserting class claims until February 20, 2003, more than six years later. Thus, according to Ford, the putative class members' benefit claims are untimely.

However, even assuming that the 1996 letter caused the claims of putative class members to accrue for statute of limitations purposes, I conclude that, pursuant to Fed. R.Civ.P. 15(c), the amended complaint asserting the class claims relates back to July 28, 2000, when plaintiff filed her original complaint against Ford. Accordingly, the benefit claims of putative class members are not untimely. Rule 15(c) provides that an amended pleading relates back to the date of the original pleading when the claim asserted "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). The rule is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been commenced, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of claims that arise out of the same conduct, transaction or occurrence. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1496 (2d ed.1990). Thus, under the rule, amendments meeting such standard relate back to the date of the initial pleading. *Id.*

Although Rule 15(c) does not expressly apply to a new pleading adding plaintiffs (as opposed to defendants), the Advisory Committee Note to the 1966 amendment indicates that the problem of relation back generally is easier to resolve when plaintiffs are added, and that the approach adopted in Rule 15(c) toward amendments adding defendants extends by analogy to amendments adding plaintiffs. Wright, Miller & Kane, *supra*, § 1501. Thus, as long as a defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. *Id.; see also Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 688–89 (N.D.Ill.1980), *aff'd*, 646 F.2d 1210 (7th Cir.1981); *see also Staren v. Am. Nat'l Bank & Trust of Chi.*, 529 F.2d 1257, 1263 (7th Cir.1976) (noting that amendments under rule 15(c) should be freely allowed).

In *Paskuly*, the plaintiff sought to amend her employment discrimination complaint to include a class of co-workers who were subject to the same alleged discriminatory treatment. Although individual suits brought by the co-workers would have been untimely, the district court allowed their claims to proceed on the ground that, under Rule 15(c), they related back to plaintiff's action. The court stated that defendant had failed to "convincingly assert[ ] any specific prejudice which it will suffer if the Court permits plaintiff's class claims to relate back," and that "the allegations of the original complaint ... apprised defendant that it would have to defend its employment practices." *Id.* at 689. The Seventh Circuit affirmed holding that where a defendant has fair notice of the potential for a class claim, the claims of such class relate back to the filing date of the original complaint. *Paskuly*, 646 F.2d at 1211.

In the present case, plaintiff commenced her original suit against Ford on July 28, 2000. The parties subsequently stipulated to a dismissal without prejudice and agreed that, if within thirty days plaintiff filed a new

case raising the same issue, the new case would relate back to July 28, 2000. Plaintiff filed the present action within thirty days; thus, it relates back to July 28, 2000. Defendant is not prejudiced by permitting the benefit claims of putative class members to relate back to July 28, 2000. This is so for several reasons. First, the class claims arise from the same conduct, transaction or occurrence as plaintiff's claim and present the same issues. Thus, Ford, had notice of the dispute within the limitations period. Second, Ford was aware that the 1996 letter would affect retirees other than plaintiff. Ford sent the letter to 291 former employees and received 161 applications for benefits. Third, there is no evidence that anything occurred between July 28, 2000, when plaintiff filed her suit, and February 20, 2003, when she added the claims of members of the putative class, that prejudiced Ford's ability to defend the action. Therefore, I conclude that the benefit claims of members of the putative class relate back to July 28, 2000, when plaintiff commenced the original action on behalf of Pickard, and are not barred by the statute of limitations.

### 8. Delay in Seeking Class Certification

Ford also argues that the action should not receive class certification because plaintiff unreasonably delayed her motion to certify. However, a brief review of the relevant chronology indicates that the argument is without merit. In early May 2002, plaintiff took depositions that caused her to conclude that a class action was viable, and on May 8, 2002, she filed a motion to amend her complaint to add class claims. In February 2003, I granted the motion, and on February 20, 2003, plaintiff filed an amended complaint asserting such claims. On May 15, 2003, plaintiff moved to certify the action as a class action. This is not unreasonable delay.

### B. Rule 23(a) Requirements

In order to obtain class certification, a party seeking class action status must satisfy the requirements of Fed.R.Civ.P. 23. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 23 imposes four explicit requirements, i.e., numerosity, commonality, typicality and adequacy of representation, and also mandates that the requirements of one of the Rule 23(b) subparts be met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Provided that the Rule 23 framework is followed, the decision to certify a class resides in the court's sound discretion. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). In exercising such discretion, I keep in mind that the Seventh Circuit has stated that Rule 23 should be liberally interpreted. *King v. Kan. City S. Indus., Inc.*, 519 F.2d 20, 25–26 (7th Cir.1975); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997) (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action .... A class action solves this problem.").

I now turn to the question of whether plaintiff has satisfied the requirements of Rule 23(a). In addressing this question, I note that I have already addressed some of Ford's arguments and will not repeat the discussion here.

### 1. Numerosity

The first of the four criteria explicitly identified in Rule 23(a) is numerosity, i.e., the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Under the rule, joinder need not be impossible but only difficult or inconvenient. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Generally, the numerosity requirement is met if the putative class consists of forty or more. *See Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D.Ill.1995). In the present case, the class numbers 161; thus, the numerosity requirement is satisfied.

### 2. Commonality

The second Rule 23(a) requirement is that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Generally, the presence of a single common legal or factual question is sufficient. *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d

48, 56 (3d Cir.1994) (stating that commonality requirement is not demanding because it may be satisfied by a single common issue); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D.Ill. 1996) (same). In the present case, there is at least one legal issue common to the class, whether Ford must pay benefits to retirees during the period between their sixty-fifth birthdays and the dates that their applications for benefits became effective. Thus, plaintiff satisfies the commonality requirement.

### 3. Typicality

Rule 23(a) also requires that the claims of the class representative be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). Typicality does not require a complete identify of claims. *Goodnight v. Shalala*, 837 F.Supp. 1564, 1583 (D.Utah 1993) (stating that typicality does not require that named plaintiff be in same position as every member of class). Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as those of the putative class. *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *Id.*

Since the claims only need to share the same essential characteristics and need not be identical, the typicality requirement is not highly demanding. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993). Typicality is often found in cases where the plaintiff alleges uniform conduct in violation of ERISA. *Id.* at 1105. Typicality is not absent in an ERISA case merely because the named plaintiff does not share the same benefits plan with all class members. An individual in one ERISA benefit plan may represent a class including participants in other plans, providing the essence of the challenge is to general practices that affect all the plans. *Id.* As I have indicated, in the present case, plaintiff's claims arise from the same course of conduct as the claims of the class, have the same characteristics as such claims and are based

on the same legal theory. Thus, plaintiff satisfies the typicality requirement.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the named plaintiff adequately represent the proposed class. In determining whether the interests of a class will be represented adequately, courts consider the adequacy of both the named representative and class counsel. *Retired Chi. Police Ass'n*, 7 F.3d at 596. Thus, adequate representation requires two elements: (1) the class representative must not have interests that conflict with or are antagonistic to those of the class; and (2) class counsel must be qualified, experienced and able to conduct the proposed litigation. *Id.* In order to satisfy the first element, it is not necessary that the interests of the class representative be identical to those of other class members. *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D.Ill.1980).

In the present case, both elements of the adequacy requirement are satisfied. Plaintiff's interests do not conflict with those of the class. Additionally, class counsel has submitted an affidavit indicating that it has a great deal of experience in handling class actions of this general type. Based on the evidence, I conclude that class counsel is competent to conduct the present action.

Thus, for the reasons set forth above, plaintiff satisfies the requirements of Rule 23(a).

### C. Rule 23(b) Requirements

In order to achieve class certification, plaintiff must also satisfy the requirements of one of the subsections of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(2) or, in the alternative, Rule 23(b)(3). Although Ford opposes class certification, it makes no argument that certification under either subdivision of Rule 23(b) is improper. Nevertheless, I will address the issue.

There are significant distinctions between class actions certified under Rule 23(b)(3) and those certified under subdivisions (b)(1) and (b)(2). Rule 23(b)(3) is so general that it encompasses all class actions, whereas actions certified under subdivisions (b)(1) and

(b)(2) represent specialized categories of class actions. Unlike actions certified under Rule 23(b)(3), in actions certified under subdivisions (b)(1) and (b)(2), it is not mandatory to give notice of the pendency of the action to class members, class members do not have the right to opt out of the action prior to judgment on the merits, and certification is less burdensome on the parties and the court. Newberg, *supra*, § 4:19.

Thus, actions that qualify for class certification under subdivisions (b)(1) or (b)(2) should not generally be certified under subdivision (b)(3). *Id.; Van Gemert v. Boeing Co.,* 259 F.Supp. 125, 130–31 (S.D.N.Y.1966) (articulating principle that actions under subdivisions (b)(1) and (b)(2) are preferred over suits under (b)(3)); *see also Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.,* 140 F.R.D. 474, 477 (S.D.Ga.1991) (stating that courts generally prefer to certify class actions under Rule 23(b)(1) or (2) because its members do not have right to exclude themselves from binding effect of class action judgment). Thus, I turn to the question of whether the action in the present case is certifiable under Rule 23(b)(2).

Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). Thus, in the present case, certification is proper under the rule if Ford's inaction affected the entire class and if declaratory relief would be appropriate for the entire class. Plaintiff alleges that Ford has failed to pay pension benefits to the 161 former employees who comprise the class and that Ford's arguments as to why it is not required to pay such benefits are largely the same with respect to each class member. Thus, Ford has "refused to act on grounds generally applicable to the class," *id.,* and the first requirement of Rule 23(b) is satisfied.

Plaintiff has requested declaratory relief; thus, in order for her to satisfy the second requirement of Rule 23(b)(2), I must determine if such relief is appropriate with respect to the entire class. The principal criteria for determining whether declaratory relief is appropriate are whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and whether it will terminate and afford relief from the uncertainty giving rise to the proceeding. *Gammon v. GC Servs. Ltd. P'ship,* 162 F.R.D. 313, 320 (N.D.Ill.1995). In the present case, a declaratory judgment would settle the issue of whether Ford is liable to class members for retroactive pension benefits. Therefore, declaratory relief is appropriate with respect to the entire class.

█ In addition to declaratory relief, plaintiff also seeks monetary relief. As a general rule, class certification under rule 23(b)(2) is improper if the primary relief sought in the action is monetary damages. *Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 898 (7th Cir.1999) (stating that Fed.R.Civ.P. 23(b)(2) does not extend to cases in which appropriate final relief relates exclusively or predominantly to money damages). However, a request for monetary relief, in addition to declaratory relief, will not prevent class certification under Rule 23(b)(2) if the monetary relief requested is equitable in nature or ancillary to the general scheme of declaratory relief sought by the plaintiff. Newberg, *supra,* § 4.14; *see also Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D. 193, 199 (D.D.C.2000). Thus, I turn to these questions.

With respect to the question of the nature of the monetary relief that plaintiff is seeking, I note that not all monetary relief can be characterized as monetary damages. *Jefferson,* 195 F.3d at 899 (distinguishing "money *damages*" from "equitable monetary *relief* such as back pay"). In the present case, the principal monetary relief plaintiff seeks is restitution. Specifically, she seeks an accounting of any benefits wrongly withheld and restitution of such benefits, as well as disgorgement of any profits attributable to such benefits. Thus, the question presented is whether, under the circumstances of the present case, the restitution sought by plaintiff may be fairly characterized as equitable monetary relief.

Restitution is that body of law in which liability is based on unjust enrichment and

the measure of recovery is based on defendant's gain instead of plaintiff's loss. Douglas Laycock, *The Scope & Significance of Restitution*, 67 Tex. L.Rev. 1277, 1293 (1989). Whether restitution is a legal or equitable remedy depends on the party from whom recovery is sought. If the beneficiary of a trust seeks an accounting of the profits of a defalcating trustee—a form of restitutionary relief—the accounting would be ordered in a suit of equity, and the remedy thus would be equitable. However, a suit seeking the identical relief against a nonfiduciary would normally be a suit at law, and the relief sought would be legal. Alan P. Woodruff, *ERISA Law Answer Book* Q18:11 (3d ed.2001) (citing 1 D. Dobbs, *Handbook on the Law of Remedies* § 4.3[5], at 608–14 (1973)). In the present case, plaintiff alleges that Ford was a fiduciary, and she seeks an accounting of the benefits that Ford allegedly wrongly withheld. Thus, the restitution that plaintiff seeks is equitable in nature.

Moreover, "restitutionary reimbursement for back benefits" is a form of equitable relief available under § 1132(a) of ERISA and, therefore, the equitable remedy of restitution includes compelling fiduciaries to pay benefits due. *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1269 (3d Cir.1995); *Harris Trust & Sav. Bank v. Salomon Bros., Inc.*, 832 F.Supp. 1169, 1173 (N.D.Ill.1993) (stating that restitution is an equitable remedy that is intended to put the plaintiff in the position he would have been in but for the improper act of the defendant, and that pursuant to the remedy of restitution, a defendant may be made to disgorge ill-gotten gains); *see also Coleman*, 196 F.R.D. at 199 (stating that plaintiff's claim for benefits was equitable in nature because it sought restitution rather than damages, thus rendering it appropriate for class certification under Rule 23(b)(2)).

Thus, under the circumstances of the present case, the restitution that plaintiff seeks can be fairly characterized as equitable monetary relief and, therefore, the request does not prevent class certification under Rule 23(b)(2). I also conclude that the monetary relief sought by plaintiff is ancillary to the general scheme of the declaratory relief that she seeks, and, for this reason also, certification is proper under Rule 23(b)(2). The monetary relief that plaintiff seeks, if recoverable, will flow "automatically from the grant of ... declaratory relief, and ... [is] subject to ready calculation on the basis of a formula or principles uniformly applicable to the class." *Rice v. City of Phila.*, 66 F.R.D. 17, 20 (E.D.Pa.1974). The present "case is not one in which 'the underlying premise of (b)(2) certification—that the class members suffer from a common injury that can be addressed by classwide relief—begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries.'" *Coleman*, 196 F.R.D. at 199 (quoting *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C.Cir.1997)). In the present case, if it is found that Ford violated the rights of plaintiff and other members of the putative class, it will, in all probability, be easy to determine the amount of benefits to which each member is entitled.

Thus, I conclude that class certification under Rule 23(b)(2) is proper. Therefore, I need not address plaintiff's request for certification under Rule 23(b)(3). I note, however, that even after a class is certified, a court has a continuing duty to assess whether certification is proper and to take whatever steps are required to protect the rights of the absentees. *See, e.g., Kuehner v. Heckler*, 778 F.2d 152, 163 (3d Cir.1985) (indicating that court must monitor its own decisions relating to class action status); *see also In re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425, 1438 (2d Cir.1993) (stating that trial judge has continuing duty to protect interests of absentees). Further, I note that when an action is certified under Rule 23(b)(2), the court may and should fashion orders to afford the maximum amount of due process. *See Jefferson*, 195 F.3d at 898; *see also Lemon v. Int'l Union of Operating Eng'rs, Local 139*, 216 F.3d 577, 582 (7th Cir.2000). Accordingly, I will monitor the class action status of the present matter and take whatever steps are necessary to protect the rights of persons not before the court.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that plaintiff's motion for class certification is GRANTED.

IT IS FURTHER ORDERED that a telephone conference will be held on April 14, 2004 at 10:30 a.m. The court will initiate the call.